WELTMAN# 040125170

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In Re: Marie J. HolguinCase No. 15-11410 J7

Chapter 7

Debtor,Hon. Robert H. Jacobvitz

---

Marie J. Holguin

Adv. No. 18-01042-j

Plaintiff,

v.
National Collegiate Student Lorust 2006-2,
A Delaware Statutory Trust

Defendant,
/

## AFFIDAVIT OF BRADLEY LUKE

STATE OF GEORGIA)
)
COUNTY OF GWINNETT)

PERSONALLY APPEARED before me, the undersigned Bradley Luke, who being duly sworn according to law, deposes and says on oath as follows:

1.My name is Bradley Luke. I am over eighteen (18) years of age and am competent to testify to the contents of this Affidavit based upon my personal knowledge of the facts and circumstances set forth herein. I am employed by Transworld Systems Inc. as the Director of Operations. In my capacity as Director of Operations, I am duly authorized by National Collegiate Student Loan Trust 2006-2 (NCSLT) to make the representations contained in this Affidavit.

1

2. TSI has been contracted to perform the duties of Subservicer for NCSLT by U.S Bank, the Successor Special Servicer for NCSLT. TSI, as the Subservicer of NCSLT, is the designated Custodian of Records for NCSLT. As Director of Operations for TSI, I have personal knowledge pertaining to the manner in which records relating to the plaintiff Marie J. Holguin's aka Marie J. Gomez's ("plaintiff") student loan, Account No. xxxxxxxxx/001-001000 (the "Loan") was kept by NCSLT and TSI, including, but not necessarily limited to, payments, credits, interest accrual and any other transactions that could impact Plaintiff's Loan. I have personal knowledge as to how NCSLT's records related to plaintiffs' Loan were created and I am familiar with NCSLT's record keeping systems.

3. Further, I have access to and training on the system of record utilized by TSI and American Education Services (AES) to enter and maintain loan account records and documentation concerning plaintiffs' Loan with NCSLT.

4. I am familiar with the process by which TSI receives prior account records, including origination records from the time the Loan was requested and/or disbursed to Plaintiff.

5. As custodian of records, it is TSI's regularly-conducted business practice to incorporate prior loan records and/or documentation into TSI's business records.

6. These student loan records are created, compiled and recorded as part of regularly conducted business activity at or near the time of the event and from information transmitted from a person with personal knowledge of said event and a business duty to report it, or from information transmitted by a person with personal knowledge of the accounts or events described within the business record. Such records are created, kept, maintained, and relied upon in the course of ordinary and regularly conducted business activity.

7.  I am further competent and authorized to testify regarding plaintiffs' Loan through personal knowledge of NCSLT and TSI's business records, including any electronic data provided to TSI and incorporated within TSI's business records that detail plaintiffs' Loan, and the business records attached to this Affidavit.

8.  TSI maintains plaintiffs' Loan records in its ordinary course of business.

9.  I have personally reviewed NCSLT's business records relating to plaintiffs' Loan and I am familiar with plaintiffs' Loan at issue in this action. NCSLT's books and records contain loan records and information for plaintiffs' Loan provided to plaintiffs by the Original Lender referenced below or its assignee. The Exhibits attached to this Affidavit are true and accurate copies, which were kept in the ordinary course of business and reflect plaintiffs' NCSLT Loan at issue in this action.

10. The business records furnished by NCSLT show that on July 27, 2005, the plaintiff executed a Student Loan, Account No. xxxxxxxxx/001-001000 with GMAC Bank ("GMAC") as evidenced by the Note Disclosure Statement and Non-Negotiable Credit Agreement ("Loan"), true and correct copies of which are attached hereto as Exhibits A and A-1.

11. The Loan was made to fund Plaintiff's tuition and cost of attendance to attend New Mexico State University for the Academic Period of August 2005 through May 2006 in the amount of $27,520. . *See* Ex. A-1. The Loan proceeds were disbursed on or about August 2, 2005. *See* Ex. A.

12. The loan is an educational loan. *See* Exhibit A-1; and *See* Complaint, ¶ 12 & 15 and its Exhibit A. *See* also Ex. B, p. 24,

13. The signature page of the Loan was faxed back after signing. *See* Ex. A-1. The terms and conditions of the Loan included in Exhibit A-1 were a part of the loan package and provided to any student applying for a loan under the GMAC Bank Undergraduate Loan Program, but were not required to be faxed with the signature page. The signature page was also a part of the loan package. TSI maintains true and correct copies of all applicable terms and conditions, and the terms and conditions attached in Exhibit A-1 are the true and correct terms and conditions for the Loan.

14. The Loan is subject to the terms and conditions in Exhibit A-1.

15. When executing the Loan, Plaintiff certified "I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523(a)(8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ('TERI'), a non-profit institution." *See* Ex. A-1, ¶ L 12.

16. When executing the Loan, Plaintiff also certified "I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or not used for educational expenses related to attendance at the School for the academic period stated." *See* Ex. A-1, ¶ N. Plaintiff did not return any of the Loan proceeds.

17. A true and correct copy of the Loan Financial Activity pages from the pre-default servicer American Education System's (AES") system of record, Compass, which is accessible to TSI as the post-default servicer of NCSLT loans is attached as Exhibit A-2.

18. A true and correct copy of the post-default Loan Payment History Report is attached as Exhibit A-3 and shows that as of April 23, 2019, Plaintiff owes NCSLT the sum of

4

$36,276.52 for principal, accrued interest and court costs. Plaintiff's last payment on the loan was October 4, 2011.

19. TERI is a non-profit corporation. *See* Exhibit A-1, ¶ L. 12; Exhibit B, p. 1, ¶ 1; Exhibit E p.13; Exhibit F, p. 1, ¶ 1; Ex. I, ¶ 1; Ex. J, ¶ 1.

20. TERI guaranteed all Loans made through the GMAC Bank Alternative Loan Program. A true and correct copy of the Guaranty Agreement between The Education Resources Institute, Inc. and GMAC Bank is attached as Exhibit B.

21. Plaintiff's Student Loan was made under The GMAC Undergraduate Loan Program, ███████████████████████████ *See* Ex. A-1, p.1, upper left–hand corner and p. 2, ¶ C 3(a); *See also* Ex. B pgs. 22 and 24; *See also* Ex. B, p. 60, ███████████████████████████████████████████████ *See also* Ex. D, p. A-1, Schedule A.

22. TERI guaranteed it would purchase defaulted Program loans and pay the holder the remaining balance of the loans *See* Exhibit B, Sec. 2.1.

23. The loans held by NCSLT in the trust were securitized and part of the final securitization package included TERI's Acknowledgement of Guaranty Agreements and its Certificate of the Guaranty Agency. *See* Ex. I & J. They were both signed on June 8, 2006, and both attach schedules showing the Guaranty includes Plaintiff's Program. *See* I, p. 4 and *See* J, p. 5.

24. TERI ██████████████████████████████████████ ████████████████████████ *See* Ex. B, p. 19, Sec. A, ████████ & p. 25, Sec. B. 6.

25. TERI was paid a guaranty fee from the individual student loans in the Loan Program. *See*; Ex. B, p. 31, Sec. II, C, & p. 89.

26. The business records furnished by NCSLT show that on or about June 8, 2006, after Plaintiff entered into her Loan, but prior to Plaintiff's last payment on the Loan, GMAC, First Marblehead Corporation ("FMC") and National Collegiate Funding LLC ("NCF") entered into a Pool Supplement wherein GMAC sold certain student loans to NCF along with its rights under the guaranty agreement with TERI. A true and correct copy of the Pool Supplement is attached hereto as Exhibit C. Debtor's Loan was included in this sale. *See* Ex. C, p. 6. TERI's Guaranty was assigned to NCF. *See* Ex. C, p. 1, Article 1 & p. 3, Article 5.

27. Plaintiff paid a guaranty fee to TERI for her loan. *See* Ex. C, p.6.

28. The business records furnished by NCSLT show that on or about June 8, 2006, after Plaintiff entered into her Loan, but prior to Plaintiff's last payment on the Loan, NCF and NCSLT entered into a Deposit and Sale Agreement, wherein NCF sold the loans to National Collegiate Student Loan Trust 2006-2, and transferred all of its rights and interests under the Pool Agreement to NCSLT. A true and correct copy of the Pool Agreement is attached hereto as Exhibit D. The transfer of rights and interests included NCF's rights under the Guaranty Agreement with TERI. *See* Ex. D, p.1, Sec. 3.02. The sale included all loans in Plaintiff's Loan Program, the GMAC Bank Alternative Loan Program. *See* Ex. D, p.10, Schedule A.

29. The business records furnished by NCSLT show that on or about June 8, 2006, after Plaintiff entered into her Loan, but prior to Plaintiff's last payment on the Loan, Wilmington Trust Company, NCF and TERI entered into a Trust Agreement. A true and correct copy of the Trust Agreement is attached hereto as Exhibit E. The Trust was set up primarily to acquire, house and service the loans. *See* Ex. E, p. 16, Sec. 2.03 & p. 48, Schedule B. TERI's

obligation to purchase defaulted loans is recited. *See* Ex. E, p. 13 ("TERI Guaranteed Loans" and "TERI Guaranty Agreements").

30. The business records furnished by NCSLT show that on or about June 8, 2006, after Plaintiff entered into her Loan, but prior to Plaintiff's last payment on the Loan, TERI, First Marblehead Data Services, Inc. and National Collegiate Student Loan Trust 2006-2 entered into a Deposit and Security Agreement. A true and correct copy of the Deposit and Security Agreement is attached hereto as Exhibit F. Under the Agreement, NCSLT agrees to purchase all loans in the GMAC Bank Loan Programs on the condition, in part, that TERI guarantees the loans. *See* Ex. F, p.1, ¶ 2.

31. A Pledged Account was created by and for NCSLT 2006-2 under the Deposit and Security Agreement. . *See* Exhibit F, p. 5, ¶ 1 (e) & p.6 ¶ 2. The Pledged Account was funded in part by guaranty fees already paid on the loans being purchased and recoveries from collections on defaulted Program loans that TERI was obligated to purchase under its Guaranty. *See* Ex. F, pgs. 6-7, Sec. 2.

32. Once a Program loan defaulted and NCSLT submitted a valid claim, the Pledged Account trustee would transfer funds from the Pledged Account to a Collection Account to pay on the Guaranty. *See* Ex. F, p. 7, 3 (a) & pgs. 14-15, Sec. 11(a)

33. Once TERI purchased a defaulted loan from the Trust, it collected on the loan through an Administrator. *See* Ex. F, pgs. 12-13, Sec. 9(c).

34. Any recovery on collection then was paid to the trustee, who deposited it in the Pledged Account, to be used to fund future guaranty payments. *See* Ex. F, pgs. 14-15, Sec. 11(b).

35. The Loan has not since been transferred or sold, and all right, title and interest remains with National Collegiate Student Loan Trust 2006-2.

36. I conducted a diligent search, have personal knowledge that TERI did indeed purchase Loans from the GMAC Bank Undergraduate Loan Program, but was unable to find documentation to support my knowledge.

Bradley Luke

SWORN TO AND SUBSCRIBED BEFORE ME

ON THIS 24 DAY OF July, 2019.

_____
NOTARY PUBLIC

My Commission Expires: 12/17/2022



8