UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re: MARIE J. HOLGUIN,     No. 15-11410-j7

     Debtor.

MARIE J. HOLGUIN,

     Plaintiff,

v.     Adversary No. 18-1042 J

NATIONAL COLLEGIATE STUDENT
LOAN TRUST 2006-2, a Delaware
Statutory Trust,

     Defendant.

### MEMORANDUM OPINION

Defendant National Collegiate Student Loan Trust 2006-2, a Delaware Statutory Trust ("NCSLT") filed a motion for summary judgment determining that the debt at issue in this adversary proceeding is a non-dischargeable "educational loan" made under a "program funded . . . in part by . . . a nonprofit institution." 11 U.S.C. § 523(a)(8)(A)(i).[1] The Motion for Summary Judgment includes a request to establish facts in this adversary proceeding pursuant to Fed. R. Civ. P. 56(g)[2] if the Court does not grant NCSLT's request for summary judgment. Plaintiff Marie J. Holguin contends that genuine issues of material fact concerning whether NCSLT is entitled to enforce the loan and whether the loan was made as part of a program funded by a nonprofit institution preclude summary judgment. *See* Response to Second Amended Motion for Summary Judgment ("Response") – Docket No. 35. NCSLT did not file a reply brief, or seek permission from the Court to offer any additional evidence in support of its Motion for summary

---

[1] *See* Defendant's Second Amended Motion for Summary Judgment ("Motion for Summary Judgment") – Docket No. 31.
[2] Rule 56(g) is made applicable to adversary proceedings by Fed. R. Bankr. P. 7056.

Judgment in an effort to address any of the potential evidentiary problems raised in the Response.

After carefully reviewing the evidence submitted in support of the Motion for Summary Judgment and the Plaintiff's Response, the Court finds and concludes that genuine issues of material fact preclude summary judgment. Some of the requested material facts are not subject to genuine dispute and can be established for all purposes in this adversary proceeding. Accordingly, the Court will deny NCSLT's request for summary judgment and grant, in part, NCSLT's request to establish certain facts pursuant to Fed. R. Civ. P. 56(g). Consistent with Fed. R. Civ. P. 56(e)(1), the Court will give NCSLT an opportunity to support or address the remaining fact issues in an effort to avoid the expense of a trial.

## SUMMARY JUDGMENT STANDARDS

A. Rule 56(a)

Summary judgment can streamline litigation and avoid the unnecessary expense of proceeding to trial. *See Farnell v. Albuquerque Publ'g Co.,* 589 F.2d 497, 502 (10th Cir. 1978) ("[S]ummary judgment is a useful tool which may avoid needless trials."); *Mitchell v. Zia Park, LLC,* 842 F. Supp.2d 1316, 1321 (D.N.M. 2012) ("Principal purposes of summary judgment include streamlining litigation and saving needless time and expense by isolating and disposing of purely legal issues and factually unsupported claims and defenses.") (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986)). The Court will grant summary judgment when the movant demonstrates that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a), made applicable to adversary proceedings by Fed.R.Bankr.P. 7056.

"[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and . . . [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323. Only if the properly supported material facts entitle the requesting party to judgment as a matter of law is it appropriate for the Court to grant summary judgment. *Id.* The Court evaluates a request for summary judgment by drawing "all reasonable factual inferences in favor of the non-moving party." *Genberg v. Porter,* 882 F.3d 1249, 1253 (10th Cir. 2018). Thus, summary judgment is appropriate "if the evidence points only one way and no reasonable inferences could support the non-moving party's position." *Id.* (citing *Auraria Student Housing at the Regency v. Campus Village Apartments*, 843 F.3d 1225, 1247 (10th Cir. 2016)).

In opposing a motion for summary judgment, a party may establish the existence of a genuinely disputed material fact by: 1) citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers or other materials" in the record; or 2) "showing that the materials cited [by the moving party] do not establish the absence . . . of a genuine dispute," or that the moving party "cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B). A dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Id.*

B.  Rule 56(g)

The Motion for Summary Judgment includes a request to treat facts as established in this adversary proceeding pursuant to Fed. R. Civ. P. 56(g), which provides:

> If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case.

Fed. R. Civ. P. 56(g), made applicable to adversary proceedings by Fed. R. Bankr. P. 7056.

Whether to grant a request to establish facts falls within the Court's sound discretion. *Id.* (providing that the court "may" enter an order establishing facts); *See* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2737 (4th ed.) ("The question whether to exercise [its] authority [to establish undisputed material facts under Rule 56(g)] is within the court's discretion.").[3]

## FACTS NOT SUBJECT TO GENUINE DISPUTE

1. Plaintiff entered into a Non-Negotiable Credit Agreement ("Loan Agreement") with GMAC Bank to attend New Mexico State University ("NMSU") for the academic period of August 25, 2005 – May 2006. *See* Statement of Undisputed Material Facts ("UMF"), No. 1; Affidavit of Bradley Luke ("Luke Affidavit"), ¶¶ 10 and 11; Complaint, Exhibit A.

2. The Loan Agreement was accompanied by a Note Disclosure Statement. *See* Complaint, Exhibit A, p. 2.

3. Plaintiff applied for the Loan Agreement by facsimile, and the signature page for the Loan was returned by facsimile. *See* UMF, No. 6; Response, ¶ 6.

4. Plaintiff signed the Loan Agreement on July 27, 2005. Complaint, Exhibit A; UMF, No. 9; Response ¶ 9; Luke Affidavit, ¶ 10.

---

[3] *See also Southwest Fin. Services of Las Cruces, Inc. v. Tarango (In re Tarango,* No. 7-07-12829 JL, 2010 WL 2178751, at *2 - *3 (Bankr. D.N.M. May 21, 2010) (declining to exercise discretion to establish facts when the party moving for summary judgment did not include a specific request to deem facts established).

5. GMAC Bank made a loan ("Loan") to Plaintiff under the Loan Agreement. UMF, No. 12 ("Plaintiff did not return any of the funds."); Response, ¶ 12.

6. The Loan was made under the GMAC Bank Undergraduate Loan Program ("Loan Program"), a part of the GMAC Alternative Loan Program. UMF, No. 2; Response, ¶ 2; Complaint, Exhibit A.

7. The Loan is an educational loan. UMF, No. 3; Response, ¶ 3.

8. The principal amount of the Loan was $27,520.00. *See* UMF, No. 1; Response, ¶ 1; Luke Affidavit, ¶ 11; Complaint, Exhibit A.

9. The Loan proceeds were disbursed on or about August 2, 2005. *See* Complaint, Exhibit A; Luke Affidavit, ¶ 11.

10. The Loan Agreement includes the following provisions:

    a. "The proceeds of this loan will be used only for educational expenses at the School."

    b. "I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523(a)(8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ('TERI'), a non-profit institution."

    c. "I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period states."

    d. "by my signature I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Loan Request/Credit Agreement."

    Loan Agreement, ¶¶ 3., L.2, L.12, N and signature page; Luke Affidavit, Exhibit A-1; UMF, Nos. 8, 10, and 11; Response, ¶¶ 8, 10, and 11.

11. Plaintiff did not return any of the funds disbursed under the Loan. UMF, No. 12; Response, ¶ 12.

12. The Educational Resources Institute, Inc. ("TERI") is a nonprofit institution. UMF, No. 5; Response, ¶ 5.

13. TERI and GMAC Bank entered into a Guaranty Agreement dated May 30, 2003 ("Guaranty Agreement"). *See* Luke Affidavit – Exhibit B.[4]

14. The Guaranty Agreement defines the "Program" as the "GMAC Bank Student Loan Program as more fully described in the Program Guidelines." Guaranty Agreement, ¶ 1.8.

15. Under the Guaranty Agreement, TERI guaranteed to GMAC Bank "the payment of 100% of the principal of and accrued interest on every Loan as to which a Guaranty Event has occurred," conditioned upon certain requirements. *See* Guaranty Agreement, Section 2.

16. The Guaranty Agreement has a stated term ending July 31, 2004, which "may be renewed by mutual agreement of the parties . . . prior to the end of the then-current term." Guaranty Agreement, Section 7.1.

17. On June 8, 2006, GMAC Bank, The First Marblehead Corporation, and National Collegiate Funding ("NCF") entered into a 2006-2 Pool Supplement GMAC Bank ("Pool Supplement"). *See* Luke Affidavit, Exhibit C.[5]

18. Under the Pool Supplement, GMAG bank sold certain loans to NCF together with GMAC Bank's rights under the Guaranty Agreement with TERI. *See* Pool Supplement, Article 1.

---

[4] Plaintiff disputes that the Guaranty Agreement establishes that TERI guaranteed the Loan or guaranteed the Loan Program. The Court will discuss the import of the Guaranty Agreement in its Discussion.
[5] Plaintiff objects to Exhibit C on the basis that the document attached to Exhibit C is a document generated by NCSLT and not Schedule 1 referenced in Exhibit C. The Court will discuss the evidentiary problem with the attachment to Exhibit C in its Discussion.

-6-

19. On June 8, 2006, Wilmington Trust Company, NCF and TERI entered into a Trust Agreement. *See* Luke Affidavit, Exhibit E.[6]

20. Schedule D of the Trust Agreement identifies the Guaranty Agreement between TERI and "GMAC Bank, dated May 30, 2003, for loans that were originated under GMAC Bank's GMAC Bank Student Loan Program." Trust Agreement, Schedule D.

21. On June 8, 2006, NCF and NCSLT entered into a Deposit and Sale Agreement wherein NCF sold the loans in the Loan Program to National Collegiate Student Loan Trust 2006-2. *See* Luke Affidavit, Exhibit D.[7]

22. NCF and NCSLT also entered into a Deposit and Security Agreement, which included a transfer of all of NCF's rights and interests under the Pool Supplement to NCSLT and facilitated the securitization of the loans. *See* Luke Affidavit, Exhibit F.[8]

23. The Deposit and Security Agreement recites that NCSLT is willing to purchase certain educational loans conditioned in part on TERI's guaranty of the payment under the terms of the Guaranty Agreement. *See* Deposit and Security Agreement, p. 1.

24. Schedule B of the Deposit and Security Agreement identifies the Guaranty Agreement with GMAC Bank, dated May 30, 2003, for loans that were originated under GMAC Bank's GMAC Bank Student Loan Program. *See* Deposit and Security Agreement, Schedule B.

---

[6] Plaintiff disputes this fact based on the alleged defect in Exhibit C, but does not dispute the existence of the Trust Agreement.

[7] Plaintiff disputes this fact based on the alleged defect in Exhibit C but does not dispute the existence of the Deposit and Sale Agreement.

[8] Plaintiff disputes this fact based on the alleged defect in Exhibit C, but does not dispute the existence of the Deposit and Security Agreement.

25. TERI signed a Certificate of Guaranty Agency in connection with the securitization of the loans in the trust, which identifies the Guaranty Agreement for loans "originated under GMAC Bank's GMAC Bank Student Loan Program." *See* Luke Affidavit, Exhibit J.[9]

26. Plaintiff does not assert that repayment of the Loan will cause an undue hardship. UMF, No. 32; Response, ¶ 32.

DISCUSSION

NCSLT contends that the facts not subject to genuine dispute establish that the debt is non-dischargeable under § 523(a)(8)(A)(i).[10] That sub-section of the non-dischargeability statute concerning student loan debt excepts from discharge:

> an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution.

11 U.S.C. § 523(a)(8)(A)(i).[11]

This non-dischargeability statute "gives effect to one of the key purposes of Section 523(a)(8), that student loans that are funded or guaranteed by a government or nonprofit entity may not generally be discharged in bankruptcy." *Golden v. JP Morgan Chase Bank (In re Golden)*, 596 B.R. 239, 266 (Bankr. E.D.N.Y. 2019). *See also Educ. Credit Mgmt. Corp. v. Polleys (In re Polleys)*, 356 F.3d 1302, 1306 (10th Cir. 2004) ("In enacting § 523(a)(8), Congress was

---

[9] Plaintiff disputes this fact based on the alleged defect in Exhibit C, but does not dispute the existence of the Certificate of Guaranty Agency.
[10] All future statutory references in this Memorandum Opinion are to title 11 of the United States Code.
[11] This subsection covers four categories of non-dischargeable student loan debts:
    1) educational benefit overpayments and educational loans made by a governmental unit;
    2) educational benefit overpayments and educational loans insured or guaranteed by a governmental unit;
    3) educational benefit overpayments or educational loans made under any program funded in whole or in part by a governmental unit; and
    4) educational benefit overpayments or educational loans made under any program funded in whole or in part by a nonprofit institution.
11 U.S.C. § 523(a)(8)(A)(i). The category of debt at issue here is category four.

primarily concerned about abusive student debtors and protecting the solvency of student loan programs."). Making student loans non-dischargeable in bankruptcy serves the purpose of "safeguarding the financial integrity of governmental entities and nonprofit institutions that participate in educational loan programs." 4 Collier on Bankruptcy ¶ 523.14[1] (Richard Levin & Henry J. Sommer eds., 16th ed.). On the other hand, "any evidence presented in connection with § 523(a)(8) must be viewed with the Congressional intent that exceptions to discharge [including student loans] be narrowly construed against the creditor and liberally in favor of the debtor in order to provide the debtor with comprehensive relief from the burden of his indebtedness." *Page v. JP Morgan Chase Bank (In re Page)*, 592 B.R. 334, 338 (8th Cir. BAP 2018) (citing *In re Johnson*, 215 B.R. 750, 753 (Bankr. E.D. Mo. 1997), *aff'd*, 218 B.R. 449 (8th Cir. BAP 1998) for the proposition that the principle requiring a narrow construction of the non-dischargeability statutes applies equally to student loan exceptions to discharge).

NCSLT bears the burden of proving, by a preponderance of the evidence, that the debt at issue is non-dischargeable under § 523(a)(8)(A)(i). *See Grogan v. Garner*, 498 U.S. 279, 287 (1991) (establishing preponderance of evidence standard for non-dischargeability actions); *McDaniel v. Navient Solutions, LLC (In re McDaniel)*, 590 B.R. 537, 545 (Bankr. D. Colo. 2018) ("'[C]reditor, must prove, by a preponderance of the evidence, that a debt exists and the debt is the type excepted from discharge under § 523(a)(8).'") (quoting *Hoffman v. Educ. Credit Mgmt. Corp. (In re Hoffman)*, 557 B.R. 177, 184 (Bankr. D. Colo. 2016)).

Non-dischargeability under this portion of § 523(a)(8)(A)(i) has four requirements: 1) the loan must be an "educational loan;" 2) the loan must be made under a "program;" 3) the program must be "funded" at least in part by a governmental unit or a nonprofit institution; and 4) if funded by an organization, the funding organization must be a "nonprofit institution." 11

U.S.C. § 523(a)(8)(A)(i). *See also The Educ. Res. Inst., Inc. v. Hammarstrom (In re Hammarstrom),* 95 B.R. 160, 165 (Bankr. N.D. Cal. 1989) ("Read carefully, the relevant portion of section 523(a)(8) renders an educational loan nondischargeable if two requirements are met. First, the loan must be made pursuant to a 'program' for providing educational loans. Second, that *program* must be 'funded' at least in part by a nonprofit organization.").

NCSLT asserts that the debt is nondischargeable because it is an "educational loan" made under GMAC Bank's Loan Program, "funded" in part by a nonprofit institution, TERI, through TERI's guaranty obligation to the Loan Program. Plaintiff concedes that the loan is an "educational loan" and that TERI is a nonprofit institution. The facts not subject to genuine material dispute are also sufficient to establish that the Loan was made as part of a loan program.[12] However, Plaintiff asserts that NCSLT has failed to establish the chain of title which would entitle it to enforce the Loan. Plaintiff also questions whether TERI guaranteed the Loan or the Loan Program, and whether TERI's guarantee constitutes "funding" within the meaning of the statute.

A. Whether NCSLT has established that it is the holder of the Loan

Plaintiff objects to the attachment to the Pool Supplement (Exhibit C), which is a one-page computer printout specific only to Plaintiff's Loan. The Pool Supplement identifies the loans to be purchased from GMAC Bank in an attached Schedule 1 as the "Transferred GMAC Bank Loans." *See* Pool Supplement, Article 1. Exhibit C is presented as the entirety of Schedule 1. However, because Schedule 1 to the Pool Supplement is a list of *all* transferred loans, it is clear that the one-page attachment to the Pool Supplement in Exhibit C cannot be Schedule 1.The Luke Affidavit states that Plaintiff's Loan was included in the sale of loans under the Pool

---

[12] The Loan Agreement itself identifies the loan as an "GMAC Bank Undergraduate Loan" and identifies under "Definitions" the "Undergraduate Alternative Loan Program." *See* Complaint, Exhibit A, p. 1 and ¶3(a).

-10-

Supplement. *See* Luke Affidavit, ¶ 26. In support of this statement, NCSLT relies solely on Exhibit C. The Luke Affidavit offers no explanation that the one-page attachment to the Pool Supplement (Exhibit C), which is specific to Plaintiff's Loan, is part of Schedule 1 referenced in the Pool Supplement. Absent an explanation for the one-page attachment, or some other evidence that NCSLT is the current holder of Plaintiff's Loan NCSLT has failed to establish that it is entitled to enforce the Loan Agreement. NCSLT has not represented that the original, executed Loan Agreement is in its possession. Even though the Deposit and Sale Agreement and Deposit and Security Agreement references the loans in the GMAC Loan Program, the evidence now before the Court is insufficient to establish that Plaintiff's Loan is one of the loans held by NCSLT.

    B.  Whether the facts not subject to genuine dispute establish that TERI[13] "funded" the program

*The meaning of "funded" in § 523(a)(8)(A)(i)*

"The protection accorded educational loans under § 523(a)(8)(A)(i) extends to private loans provided the overall loan program pursuant to which such loans were issued received non-profit funding." *Jean-Baptiste v. Educ. Credit Mgmt. Corp. (In re Jean-Baptiste),* 584 B.R. 574, 585 (Bankr. E.D.N.Y. 2018). It is not necessary for the nonprofit institution to have funded the loan at issue for the discharge exception to apply. *See In re O'Brien*, 419 F.3d 104, 106 (2d Cir. 2005) ("Section 523(a)(8) does not require that TERI fund O'Brien's loan in order for that section to be applicable."); *Prouty v. JP Morgan Chase & Co. v. (In re Prouty),* No. 08-11757,

---

[13] Plaintiff asserts that TERI filed a chapter 11 bankruptcy petition in 2008, wherein TERI's confirmed plan settled all of NCSLT's claims, including the rejection of any Guaranty Agreements. *See* Response, ¶¶ 35 – 38. Plaintiff also asserts that she did not default under the Loan until after the Guaranty Agreements were rejected under TERI's confirmed chapter 11 plan. The Court need not address these arguments. As explained below, NCSLT need only establish that it is the current holder of the Loan, and that the Guaranty Agreement was in effect as of the time the Loan was made.

2010 WL 3294337, at *7 (Bankr. D. Kan. Aug. 19, 2010) ("A distribution of funds from the nonprofit institution to the borrower i[s] not required."). The nonprofit need only have funded the loan *program* in part, for the discharge exception to apply. *See Greer-Allen v. National Collegiate Student Loan Trust 2005-1 (In re Greer-Allen)*, 602 B.R. 831, 836 (Bankr. D. Mass. 2019) ("[I]t is the program, not the individual loan, that must have been funded by a governmental unit or nonprofit institution."); *O'Brien,* 419 F.3d at 106 ("[I]t is an entirely different question whether TERI funded the loan *program* under which O'Brien's loan was made.").

The majority of courts to consider the issue conclude that a nonprofit institution's guarantee satisfies the statute's "funded" requirement. *O'Brien,* 419 F.3d at 106 ("While it may be true that TERI merely guaranteed, without funding, O'Brien's particular loan . . . . TERI was clearly devoting some of its financial resources to supporting the program."); *In re Taratuska,* No. CIV. A. 07-11938-RCL, 2008 WL 4826279, at * 3 (D. Mass. Aug. 25, 2008) ("[T]he courts that have interpreted this clause of the statute . . . have uniformly found that loans made under any program funded in whole or in part by a nonprofit institution does encompass the role that nonprofit guarantors play."); *Greer-Allen*, 602 B.R. at 836 ("A nonprofit institutions' guarantee of a loan made under a program serves as evidence that the program was funded by that nonprofit institution."). Some courts observe further that "'Congress intended to include within § 523(a)(8) all loans made under a program in which a nonprofit institute plays any meaningful part in providing funds.'" *Taratuska,* 2008 WL 4826279, at *4 (quoting *Hammarstrom,* 95 B.R. at 165); *Prouty*, 2010 WL 3294337 at *7 ("An educational loan is made  under a program funded

in whole or in part by a nonprofit institution when a nonprofit corporation plays a meaningful role in the program by insuring the loans.").[14]

The facts not subject to genuine dispute now before the Court do not establish that TERI in fact paid any of its guaranty obligations to GMAC Bank under the Loan Program. The Luke Affidavit's self-serving statement that he has "personal knowledge" that TERI paid out on some of its guarantees, without any supporting documentation, is ineffective to establish on summary judgment that TERI committed any monetary resources to fund the Loan Program. *See Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1201 (10th Cir. 2015) ("Affidavits must contain certain indicia of reliability. 'Unsubstantiated allegations carry no probative weight in summary judgment proceedings[; they] must be based on more than mere speculation, conjecture, or surmise.'") (quoting *Bones v. Honeywell Int'l., Inc.*, 366 F.3d 869, 875 (10th Cir. 2004)); *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) ("[S]elf-serving statements in affidavits *without factual support in the record* carry no weight on summary judgment."); *Henderson v. White (In re Henderson)*, 560 B.R. 365, 371 (Bankr. D.N.M. 2016) ("Conclusory, self-serving affidavit testimony, absent specific supporting facts, lacks probative value."). Further, unless the affiant was present to witness a payout on the guaranty, the witness cannot have "personal knowledge" as that term is used in Fed.R.Evid. 602. *See* 27 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure: Evidence 2d § 6023 (2007) (personal knowledge under Fed.R.Evid. 602 begins with the sensory perception of events).

---

[14] *But see Page*, 592 B.R. at 339 (concluding that "the bankruptcy court's broad construction of the term 'funded' is inconsistent with Congress' intent that exceptions to discharge be narrowly construed; no evidence "established that TERI guaranteed the loans, processed the loans, or even received the loans," and the bankruptcy court did not rely on TERI's alleged guarantee of the loan to conclude that TERI played a meaningful part in the program. The BAP remanded the issue of the legal significance of TERI's guarantee of the loan on dischargeability to the bankruptcy court).

NCSLT asserts that the existence of the guaranty itself is sufficient to render the loan non-dischargeable under § 523(a)(8)(A)(i). Case law supports this contention. *See, e.g., Greer-Allen*, 602 B.R. at 839 ("While the record lacks direct evidence of payments from TERI to the program, TERI's guaranty of all loans made under the Program conclusively establishes that the Program was funded in part by TERI."); *McClain v. American Student Assistance (In re McClain)*, 272 B.R. 42, 46 (Bankr. D.N.H. 2002) (where the funding of the loans at issue was conditioned upon TERI's participation in guaranteeing the loans, "TERI played a meaningful part in procurement of the loans, making them nondischargeable pursuant to the language of § 523(a)(8)."). *But see Wiley v. Wells Fargo Bank, N.A. (In re Wiley)*, 579 B.R. 1, 7 (Bankr. D. Me. 2017) ("The existence of a guarantee from a nonprofit institution is not, by itself, enough.").

The Court is persuaded that in many circumstances the existence of a guaranty itself is sufficient to satisfy the "funded" requirement under § 523(a)(8)(A)(i). "A guaranty helps fund a program because it encourages a lender to extend credit that may not otherwise be available." *Greer-Allen,* 502 B.R. at 838. By guarantying an educational loan program, the nonprofit commits financial resources to the program that will help perpetuate its existence. And the commitment of financial resources by guarantying the program is sufficient to satisfy the "funded" requirement of § 523(a)(8)(A)(i).

However, the evidence now before the Court is insufficient to establish that the Guaranty Agreement was in effect at the time Plaintiff obtained the Loan. As Plaintiff points out, the term of the Guaranty Agreement attached in support of NCSLT's summary judgment expired before the date Plaintiff obtained the Loan. If the Loan was extended at a time when the Guaranty Agreement was not in effect, NCSLT cannot establish that the Loan was part of a loan program funded in part by a nonprofit institution based on TERI's guarantee of the Loan Program. The

Guaranty Agreement provides that its term may be renewed by mutual agreement of the parties . . . prior to the end of the then-current term." Guaranty Agreement, Section 7.1. But there is no direct evidence before the Court that the Guaranty Agreement was, in fact renewed. The Loan references TERI's guaranty,[15] as do the Pool Supplement, Deposit and Sale Agreement and Deposit and Security Agreement. But "the boilerplate language of the Loan Documents cannot prove the actual existence of a guaranty." *In re Clouser*, No. 11-33104-tmb7, 2016 WL 5864493, at *3 (Bankr. D. Or. Oct. 6, 2016). *See also Greer-Allen,* 602 B.R. at 838 ("[T]he language in the loan documents is not, standing alone, sufficient to prove the existence of the guarantees."). The Court will not infer the continuing effectiveness of TERI's guaranty at the time of Plaintiff's loan based on the evidence now before the Court. If the Guaranty Agreement was not in effect at the time Plaintiff obtained her Loan, NCSLT cannot established that the Loan was part of a loan program funded in part by a nonprofit institution.

Finally, Plaintiff notes that the Guaranty Agreement requires that loans must be used for educational expenses at a TERI-approved school, and asserts that there is no evidence to establish that NMSU is a TERI-approved school. NCSLT has not supported its motion for summary judgment with a list of TERI-approved schools that identify NMSU as a TERI-approved school. Nevertheless, the Court is willing to infer that NMSU is a TERI-approved school provided that NCSLT can establish that the Guaranty Agreement was in effect at the time Plaintiff obtained the Loan. The Guidelines for the GMAC Alternative Loan Program, (attached

---

[15] The Loan Agreement provides:
> I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523(a)(8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ('TERI'), a non-profit institution

-15-

Case 18-01042-j    Doc 36    Filed 12/17/19    Entered 12/17/19 17:08:10 Page 15 of 17

to the Luke Affidavit as Exhibit B), define "Participating Schools" as "Eligible primary and secondary schools, undergraduate colleges and universities, and graduate schools approved by TERI in consultation with FMC [First Marblehead Corporation]." The Underwriting, Origination and Loan Term Guidelines for GMAC Bank, GMAC Alternative Loan Program, GMAC Alternative Undergraduate Loans, GMAC Alternative Graduate Loans, GMAC Alternative Continuing Education Loans ("Underwriting Guidelines" – Attached to the Luke Affidavit as Exhibit B), provides that "[s]chool eligibility to participate in these loan programs is determined by TERI in its sole discretion in consultation with FMC." Underwriting Guidelines, Section B.6. Plaintiff's attempt to create a fact issue based on NCSLT's failure to provide a list of TERI-approved schools is insufficient. Plaintiff has not pointed to any evidence that would suggest NMSU, one of two major universities in the entire state of New Mexico, is not a TERI-approved school. The face of the Loan Agreement identifies the loan as a GMAC Bank Undergraduate Loan guaranteed by TERI and identifies the school as NMSU. *See* Loan Agreement, p. 1 and ¶ 12. Further, the Guaranty Agreement gives TERI the discretion to approve the schools eligible to participate in the Loan Program and the Loan was extended to Plaintiff under the Loan Program for the purpose of attending NMSU.

## CONCLUSION

Genuine issues of material fact concerning whether NCSLT is the holder of the Loan Agreement and whether the Guaranty Agreement was in effect when Plaintiff obtained her Loan preclude summary judgment. However, consistent with Fed. R. Civ. P. 56(e), the Court will give NCSLT an opportunity to supplement its Motion for Summary Judgment with additional evidence to establish these facts. *See* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by

Rule 56(c), the court may . . . five an opportunity to properly support or address the fact"). In addition, consistent with Fed. R. Civ. P. 56(g), the Court will deem established the facts set forth in paragraphs 1 through 25 above under the section entitled Facts Not Subject to Genuine Dispute as established in this adversary proceeding.

The Court will enter a separate order consistent with this Memorandum Opinion.

                                            _____
                                            ROBERT H. JACOBVITZ
                                            United States Bankruptcy Judge

Date entered on docket: December 17, 2019

COPY TO:

R Trey Arvizu, III
Attorney for Plaintiff
PO Box 1479
Las Cruces, NM 88004-1479

Monette Cope
Attorney for Defendant
Weltman Weinberg & Reis
180 North LaSalle Street, Suite 2400
Chicago, IL 60657

Andrew Paul Yarrington
Attorney for Defendant
Rose L. Brand & Associates, PC
7430 Washington Street NE
Albuquerque, NM 87109